# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| ROSEMARY AMPONSAH, | : | CIVIL ACTION NO. _____ |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE |
| v. | : | |
| | : | MAGISTRATE JUDGE |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | : : | |
| | : | |
| Defendant. | : | **JURY DEMAND ENDORSED HEREON** |

## COMPLAINT

### I. Preliminary Statement

1. This action seeks economic, compensatory, and punitive damages; declaratory, injunctive, and equitable relief; prejudgment and post-judgment interest; and attorneys' fees and costs for the violations of Title VII of the Civil Rights Act of 1964 and the Ohio Laws Against Discrimination ("OLAD") committed when Defendant International Business Machines Corporation ("IBM") retaliatorily terminated Plaintiff Rosemary Amponsah because management resented her persistent accusations of discrimination, which were made when she responsibly opposed that discrimination internally and then dual-filed charge affidavits with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC").

### II. Jurisdiction and Venue

2. This action brings a retaliation claim against IBM under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* and OLAD, pursuant to a Charge Affidavit alleging retaliation timely dual filed with the EEOC and the OCRC in September 2022 after Plaintiff's termination on

September 16, 2022, which built on a Charge Affidavit alleging discrimination on the basis of race/color, sex, and national origin/ancestry timely dual filed on May 27, 2022, probable cause findings and right-to-sue notices issue by the OCRC, copies of which are attached hereto as Exhibit A.  Pursuant to the work-sharing agreement between the OCRC and the EEOC, the issuance of the Right to Sue notices by the OCRC concludes the EEOC's process, and this lawsuit may thus be filed under Title VII; the EEOC will issue Notices of Right to Sue soon.

     3.     This Court has jurisdiction over this action by virtue of 28 U.S.C. §§ 1331 (federal question); 1343 (civil rights); and 1367 (supplemental jurisdiction).

     4.     Declaratory, equitable, and injunctive relief is sought pursuant to 28 U.S.C. §§ 2201; 2202.

     5.     Economic, compensatory, and punitive damages may be awarded under Title VII, 42 U.S.C. § 1981a, OLAD, and Ohio common law.

     6.     Costs and attorneys' fees may be awarded pursuant to Title VII, 42 U.S.C. § 2000e-5(k); Fed. R. Civ. P. 54; 42 U.S.C. § 1988; OLAD; and Ohio common law.

     7.     Venue lies in this forum pursuant to 28 U.S.C. § 1391(b) and S.D. Civ. R. 82.1 because the termination occurred in Franklin County, Ohio where IBM conducts operations at 250 S. High St. in Columbus.

**III.**     **Parties**

     8.     Plaintiff Amponsah, a dark-skinned Ghanian African-American female, was hired by IBM on October 9, 2018 as a Partner Brand Sales Specialist in the District of Columbia area. She quickly proved herself, excelling in the role prior to being forced to take medical disability leave due to chronic anemia that significantly impairs her major life activities. A 2018 graduate of Cornell University Johnson Graduate School of Management with an MBA, and a prior Bachelor

of Science in Biology from Fitchburg State University, Ms. Amponsah brought this background to IBM. This included successful regional sales experience at Boehringer Ingelheim, a leading international pharmaceutical company.

9. Defendant IBM is a global leader in the computer infrastructure, software, and consulting field, earning more than $60 billion in annual revenue; has, at all times relevant to this Complaint, had more than 280,000 employees worldwide and been an employer covered by Title VII of the Civil Rights Act of 1964 and OLAD; is incorporated and headquartered in New York, and conducts operations in a Columbus, Ohio office where it ultimately employed Plaintiff and then retaliatorily terminated her on September 16, 2022.

**IV.     Facts**

10. Before impact on IBM's business from the COVID-19 pandemic was felt, Plaintiff was regularly praised for her job performance by her supervisor, Sri Srinivasan.

11. Plaintiff's duties had been concentrated on the IBM ecosystem.

12. A main objective of the IBM ecosystem was connecting its small and minority-owned business partners to the skills, mentoring and teaming opportunities that facilitated their federal government business development efforts and enhanced cybersecurity through use of the cloud, automation, and Artificial Intelligence (AI).

13. Plaintiff excelled at sales relating to the IBM ecosystem.

14. Those sales were often done in personal interactions.

15. Plaintiff was professional, articulate, knowledgeable, and impressive in her business interactions.

16. In January 2022, Plaintiff was out on an approved disability medical leave.

17. IBM then restructured its sales department, affecting more than 2,000 employees.

18. Upon her return from medical leave at the end of February 2022, Plaintiff wanted to continue in her sales position.

19. Plaintiff learned, however, that nearly all of her past customers had been reassigned and were no longer available for her contact.

20. IBM had led Plaintiff to believe that, upon return from her medical leave she would be reinstated to the same or a comparable position.

21. Plaintiff complained that she was being treated differently than other Partner Brand Sales Specialists.

22. The other Partner Brand Sales Specialists under Supervisor Srinivasan survived the restructuring and continued to work with their customers.

23. Those other specialists consisted of two Caucasian females and two Caucasian males.

24. IBM transitioned them to their new positions without requiring them to apply.

25. IBM required Plaintiff to apply for a new position upon her return from medical leave.

26. On March 8, 2022, Supervisor Srinivasan offered Plaintiff a "geoaligned" face-to-face direct sales position, though the location of the position or its details were not discussed.

27. Plaintiff considered the offer and explained that it differed from her prior position and requested an ecosystem sales position.

28. Supervisor Srinivasan denied that request, saying that the ecosystem sales positions were filled.

29. Plaintiff provided to Supervisor Srinivasan a list of roles from the IBM career portal that were actually comparable to her prior position.

30. Supervisor Srinivasan responded that the positions were in the Midwest region and did not pursue Plaintiff's request further.

31. Plaintiff officially started in her reinstated position on April 1, 2022.

32. On April 21, 2022, Supervisor Srinivasan criticized Plaintiff's fourth quarter 2021 sales.

33. Plaintiff had, however, been on the approved medical leave during that period.

34. During her medical leave and on the advice of her health care professional after a flare-up of her disability created an emergency, Plaintiff moved to Ohio to be near family for assistance while she recuperated.

35. Plaintiff's position before her medical leave could be performed from Ohio.

36. IBM has a liberal relocation policy and procedure, and Plaintiff submitted her new address to the "askHR," copying Supervisor Srinivasan.

37. Although prior approval for relocation is required for employees performing their job duties, Plaintiff believed that submitting the information would suffice while she was on medical leave and given the emergency.

38. On May 6, 2022, Supervisor Srinivasan placed Plaintiff on a 60-day Performance Improvement Plan ("PIP") ostensibly because her relocation had not been "substantiated," she had not been performing up to expectations, and she was not fully communicating with him.

39. On April 20, 2022, Plaintiff asked Supervisor Srinivasan for guidance on the metrics that would be used to measure her job performance, but a full explanation was never given to her.

40. Other Partner Brand Sales Specialists in the public sector were having difficulty meeting their sales goals, but only Plaintiff was placed on a PIP.

41. Supervisor Srinivasan had acquiesced in Plaintiff's relocation after his initial criticism of her relocation, and she was surprised that the relocation was given as grounds for the PIP.

42. Due to the relatively short time between her return from medical leave at the end of February and the official start in her new position on April 1, 2022, Plaintiff feared that she was being singled out for the PIP and Supervisor Srinivasan was developing grounds for her termination.

43. Prior supervisors had rated Plaintiff in 2019 and 2020 as performing very well in her position, and they anticipated she would excel in her IBM career.

44. In June 2022, Plaintiff reported to IBM's Employee Concern Partners that she believed her new role was assigned to ensure her failure to perform up to expectations, unlike the way other salespersons were transitioned after the restructuring.

45. IBM investigated Plaintiff's report and concluded that it could not substantiate differential treatment.

46. Meanwhile, Plaintiff felt stress from her new duties and her sense of being treated differently, and that stress exacerbated her pre-existing disability, necessitating her taking additional medical leave.

47. Supervisor Srinivasan criticized Plaintiff for refusing to meet with him on July 8, 2022, August 8, 2022, and August 12, 2022; however, Plaintiff had emailed him regarding her medical leave for each day and communicated the duties that had to be performed and needed coverage by others.

48. Plaintiff's treating physician had advised her to stop working in July and receive treatment until an office visit on September 13, 2022, to diagnose whether her health improved.

49. Plaintiff notified IBM of her doctor's orders.

50. Supervisor Srinivasan claims to have attempted unsuccessfully to contact Plaintiff on June 6, 2022, July 6, 2022, August 8, 2022, August 12, 2022, and September 12, 2022.

51. On those dates, Plaintiff was on approved leave.

52. Supervisor Srinivasan emailed Plaintiff to either return to work on September 16, 2022, or contact him no later than the end of business that day to discuss her return to work.

53. Plaintiff and Supervisor Srinivasan met on September 16, 2022, but rather than discuss her return to work, he terminated her.

54. Supervisor Srinivasan told Plaintiff to file an appeal if she did not agree with her termination.

55. On September 22, 2022, Plaintiff requested a formal termination letter, but she never received a reply

56. Throughout her leaves, Plaintiff exchanged emails and otherwise communicated fully with Supervisor Srinivasan.

57. In those communications, Supervisor Srinivasan stressed IBM's commitment to Plaintiff's career and his facilitating that career.

58. In conversations and his acts toward Plaintiff, however, Supervisor Srinivasan impaired her career and, in explaining the decision to discharge her, explicitly connected it to her allegations of discrimination.

59. In their last telephone conversation on September 16, 2022, Plaintiff asked for the reasons why she was being terminated, and Supervisor Srinivasan explained to her:

    SS:    Rozy I'm sorry, but I have to let you go

    RA:    What do you mean?

      SS:      You're not returning back to work, I have to let you go

      RA:      Why?

      SS:      You've been coming up in a lot of upper management meetings with your complaints and I'm receiving a lot of pressure from them to let you go, I'm gonna have to let you go. I'm sorry.

60. Plaintiff's complaints about discrimination, both internally and in the initial charge affidavit she dual filed with EEOC and OCRC, were based on acts and omissions by IBM that she sincerely and reasonably believed constituted discrimination.

61. The way she was treated on and after her medical leaves made Plaintiff sincerely and reasonably believe that IBM was discriminating on the basis of her disability or its perception of that disability.

62. IBM's use of the medical leaves she had taken and their impact on her sales and availability to communicate with Supervisor Srinivasan indicated such disability discrimination.

63. Plaintiff understood that the IBM custom was to permit employees who had taken medical leaves of absence comparable to or longer than hers to have had the leaves honored without ongoing work communications or negative effect on their performance rating.

64. Despite reasonable diligence Plaintiff has been unable to secure employment comparable to her position at IBM.

65. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered and continues to suffer emotional distress, humiliation, and frustration.

66. But for her charges and complaints about what she reasonably and sincerely perceived was discrimination, Plaintiff would not have been terminated.

67. IBM's actions and omissions were done in conscious disregard of Plaintiff's statutory rights in a way that was highly probable to cause and did cause her substantial harm.

**V.      Claims for Relief: Retaliation**

68.     Plaintiff incorporates, as if fully realleged, paragraphs 1-67 of this Complaint.

69.     By terminating Plaintiff because she had responsibly opposed conduct she sincerely and reasonably believed constituted discrimination and dual-filed an administrative charge of discrimination, IBM retaliated against her in violation of Title VII and OLAD.

**VI.     Prayer for Relief**

WHEREFORE, Plaintiff prays that this Court:

a.     declare that Defendant has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and OLAD;

b.     order such injunctive and equitable relief as will make Plaintiff whole for Defendant's violations, and pre- and post-judgment interest;

c.     award compensatory and punitive damages in excess of $75,000;

d.     allow a reasonable attorneys' fee and costs; and

e.     grant such other relief as the Court may deem appropriate.

Respectfully submitted,

By: /s/ *John S. Marshall*
John S. Marshall (0015160)
(*jmarshall@marshallforman.com*)
Madeline J. Rettig (0098816)
(*mrettig@marshallforman.com*)
Edward R. Forman (0076651)
(*eforman@marshallforman.com*)
Samuel M. Schlein (0092194)
(*sschlein@marshallforman.com*)
Helen M. Robinson (0097070)
(*hrobinson@marshallforman.com*)
MARSHALL & FORMAN LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (614) 463-9780

## **JURY DEMAND**

Plaintiff requests a trial by a jury of eight (8) persons.

By_____
John S. Marshall (0015160)